NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ITALIAN AMERICAN ONE VOICE COALITION, INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>TOWNSHIP OF WEST ORANGE, and ROBERT D. PARISI, in his official capacity as Mayor of the Township of West Orange,<br><br>        Defendants. | Civil Action No.: 2:20-cv-12650<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.** **INTRODUCTION**

This matter comes before the Court by way of Defendants Robert Parisi, in his official capacity as Mayor of West Orange, New Jersey,[1] and Township of West Orange's ("West Orange") (collectively, "Defendants") motion to dismiss Plaintiff Italian American One Voice Coalition Inc.'s ("Plaintiff" or "IAOVC") Second Amended Complaint (ECF No. 29, "SAC") pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). ECF No. 32. Plaintiff opposed Defendants' motion (ECF No. 35 ("Opp.")), and Defendants replied. ECF No. 39. With the Court's leave, Plaintiff and Defendants filed supplemental briefs (ECF Nos. 42 and 43), and

---

[1] As of January 1, 2023, Robert Parisi's term as Mayor of West Orange ended and he was succeeded by current Mayor Susan McCartney. On January 19, 2023, counsel for Plaintiff filed a letter seeking a status conference to discuss "how the matter would proceed against Mr. Parisi and whether the new Mayor should properly be named." ECF No. 45. Defendants Township of West Orange and Mr. Parisi, through counsel, opposed any such amendment to name Mayor McCartney as a defendant. ECF No. 47. Magistrate Judge Leda D. Wettre held a status conference to discuss these issues on January 31, 2023. Plaintiff's counsel elected to await the outcome of this motion before moving to amend the pleading to substitute Mayor McCartney as a defendant.

Defendant furnished a response. ECF No. 44.[2]  The Court has considered the submissions made in support of and in opposition to the motion and decides the motion without oral argument pursuant to Fed. R. Civ. P. 78(b).  For the reasons set forth below, Defendants' motion is granted and the Court dismisses the SAC.

**II.    BACKGROUND**

Plaintiff, an "apolitical organization dedicated to the rightful representation of Americans of Italian origin," (SAC at ¶ 11) alleges that Defendants violated its constitutional rights when Defendants removed the Christopher Columbus monument (the "Monument") located at the intersection of Valley Street and Kingsley Street in West Orange, New Jersey. *See generally id*. On October 10, 1992, West Orange public officials dedicated the Monument, which was allegedly funded and installed by members of the Italian-American community of West Orange through the Valley Civic Association (the "VCA").  *Id.* at ¶¶ 21, 23, 25, 27.  Plaintiff asserts that its members also were members of the VCA at the time at the time of the Monument's funding, and that some IAOVC members personally contributed to the funding and installation of the Monument.  *Id.* at ¶¶ 17–19.  Plaintiff further claims that its members regularly visited the Monument and intended to continue visiting the Monument prior to its removal. *Id.* at ¶¶ 15–16.

Years after the Monument's construction, during the Summer of 2020, civic protests took place throughout the United States, including in New Jersey, against systemic racism. *Id.* at ¶ 38. Plaintiff contends that following these protests, Mayor Parisi announced that he was in favor of the removal of the Monument so that it could be replaced with "something that is a better representation" of West Orange because "what Columbus means today is not what it meant to the

---

[2] Though given leave to reply to Defendants' supplemental brief (ECF No. 41), Plaintiff did not submit a response.

2

community in the 90s." *Id.* at ¶ 45. On June 13, 2020, Mayor Parisi allegedly announced his final decision on behalf of West Orange to remove the monument. *Id.* at ¶ 48. Plaintiff asserts that Mayor Parisi and the City Council of West Orange did not propose, discuss, nor pass any ordinance or resolution authorizing the removal of the Monument. *Id.* at ¶ 50. Plaintiff also alleges that on June 23, 2020, West Orange's Assistant Township Attorney, Kenneth Kayser, presented at a City Council meeting and expressed the opinion that Mayor Parisi had the authority to remove the Monument without any affirmative vote by the City Council. SAC at ¶ 50. Thereafter, West Orange public works employees purportedly removed the Monument on July 14, 2020, at which point the VCA allegedly retook possession. *Id.* at ¶ 52.

On September 14, 2020, Plaintiff brought its initial complaint in this case, followed by a two-count first amended complaint on November 19, 2020. ECF Nos. 1, 13. In those initial pleadings, Plaintiff argued that Defendants, by removing the Monument, violated Plaintiff's rights under the Equal Protection Clause to the Fourteenth Amendment to the U.S. Constitution, and its right to procedural due process under the Fifth Amendment to the U.S. Constitution, incorporated against the states under the Fourteenth Amendment to the U.S. Constitution. ECF No. 13 at ¶¶ 27–38. On July 30, 2021, this Court dismissed Plaintiff's first amended complaint for failure to state a claim for which relief can be granted. *Italian Am. One Voice Coal. v. Twp. of W. Orange*, No. 20-12650, ECF No. 27, 2021 WL 3260855 (D.N.J. July 30, 2021). Specifically, this Court determined that Plaintiff failed to adequately allege an equal protection violation because Plaintiff's conclusory allegations did not support an inference of discriminatory intent. *Id.* at *3. Further, this Court rejected Plaintiff's procedural due process claim because Plaintiff failed to adequately allege a protected property interest in the Monument. *Id.* at *3–4.

3

On August 26, 2021, Plaintiff filed its instant SAC. ECF No. 29. Plaintiff pled additional facts in support of its existing equal protection and procedural due process claims. *See generally id.* Further, Plaintiff added two causes of action for violation of its First Amendment right to freedom of speech (*id.* at ¶¶ 60–73) and abuse of public trust (*id.* at ¶¶ 93–107). On May 26, 2022, Plaintiff requested permission to file a supplemental brief in support of its First Amendment claims in light of the United States Supreme Court's decision in *Shurtleff v. City of Boston*, 142 S. Ct. 1583 (2022), decided May 2, 2022. ECF No. 40. With the Court's permission, Plaintiff and Defendants submitted supplemental briefing and a defense reply. ECF Nos. 41–43.

### III.  LEGAL STANDARD

#### a.  Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6)

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n] that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Id.* at 678 (citations omitted).

4

## IV.     DISCUSSION[3]

As a threshold matter, it appears that Plaintiff possesses Article III standing to bring the instant claims.  Standing requires three elements:  (1) an injury in fact that is concrete and particularized and actual and imminent, as opposed to conjectural or hypothetical; (2) a causal connection between the injury and the conduct of which the plaintiff complains; and (3) the alleged injury is likely to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Here, drawing all inferences in favor of Plaintiff, the SAC adequately establishes Article III standing.

The Court looks primarily, as do the parties, to the Eleventh Circuit's instructive opinions in *Gardner v. Mutz*, 962 F.3d 1329 (11th Cir. 2020) ("*Gardner I*") and *Gardner v. Mutz*, 857 F. App'x 633, 634–35 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 762, 211 L. Ed. 2d 478 (2022) ("*Gardner II*").  There, members of a Confederate heritage organization sued the City of Lakeland, Florida for violations of their First Amendment free speech rights and due process rights under the Fourteenth Amendment arising from the decision to relocate a privately-funded Confederate monument from one public park to another. *Gardner I*, 962 F.3d at 1334.  In *Gardner I*, the Eleventh Circuit determined that plaintiffs lacked standing and affirmed dismissal because plaintiffs had not shown that removal of the Confederate monument represented a "concrete" or "particularized" injury. *Id.* at 1341–44.  Defendants argue that the injury suffered in the instant action is analogous to that in *Gardner I*, and therefore Plaintiff here similarly lacks standing for failure to adequately allege injury.

---

[3] Mayor Parisi is protected from this suit under the doctrine of qualified immunity, but only to the extent that Plaintiff seeks damages, and not injunctive relief. *Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006).

The Court disagrees and instead is guided by the Eleventh Circuit's more recent decision in *Gardner II*. In *Gardner II*, the circuit found standing pursuant to an amended pleading showing sufficiently concrete and particularized injury. Specifically, the court found:

> Namely, multiple plaintiffs allege that they visit the monument regularly and have concrete plans to visit the monument again in the future. They allege that their planned future use and enjoyment of the monument is obstructed by the City's relocation of it. These are the sorts of future injuries that were missing in *Lujan* and that are concrete for Article III purposes. The injuries are also particularized because they injure only those people who regularly visit the monument and plan to do so in the near future, rather than the undifferentiated public. These plaintiffs also satisfy the other two elements of standing doctrine because they allege that the City caused the injury by moving the monument and because their injury can be redressed via the requested injunction to have it returned.

*Gardner II*, 857 F. App'x at 634–35. Plaintiff's SAC in the instant action appears to replicate the amendments made in *Gardner II* to demonstrate standing. Plaintiff's SAC now asserts a particularized, concrete injury by pleading that its individual members visited the Monument regularly, intended to visit in the future, and will no longer be able to enjoy the Monument after its removal. SAC at ¶¶ 15–16, 58. Likewise, Plaintiff adequately pleads the second and third prongs of the Article III standing inquiry by alleging that Defendants caused the injury by moving the monument (*id.* at ¶¶ 72, 85, 91) and by asserting that their injury can be redressed via the relief requested in the instant action (*see generally id.*). Thus, like in *Gardner II*, these amendments adequately allege standing. *See also Am. Italian Women for Greater New Haven v. City of New Haven*, No. 21-01401, 2022 WL 1912853, at *4–5 (D. Conn. June 3, 2022) (relying on *Gardner II* to find standing and concluding that plaintiffs had adequately pleaded concrete injury caused by the removal of a Christopher Columbus monument from a public park).[4]

---

[4] It appears that Plaintiff also has sufficiently pleaded associational standing under *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Associational standing, which permits an organization like Plaintiff to sue on behalf of its members, requires that: (a) the association's

Nevertheless, despite conferring standing in *Gardner II*, the Eleventh Circuit rejected plaintiffs' substantive allegations for failure to state a claim. Similarly, here, while Plaintiff may have established standing to pursue its claims, this Court finds that Plaintiff has failed to allege a violation of the Equal Protection Clause, the Due Process Clause, the First Amendment, or the public trust doctrine. Accordingly, the Court dismisses the SAC.

### a. Equal Protection Clause

Plaintiff realleges equal protection violations in an attempt to remedy two primary defects on which the Court based its prior dismissal: 1) failure to allege that similarly situated persons were treated differently; and 2) failure to allege that Defendants acted with discriminatory intent in removing the Monument. *See Italian Am. One Voice Coal.*, ECF No. 27, 2021 WL, at *2–3. Plaintiff's SAC does not cure these deficiencies, and thus the Court dismisses this cause of action for failure to state a claim. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1; *Vacco v. Quill*, 521 U.S. 793, 799 (1997). Pursuant to this mandate, a state "must govern impartially," *New York City Transit Authority v. Beazer*, 440 U.S. 568, 587 (1979), and "ensure that all persons similarly situated are treated alike." *Johnson v. Paparozzi*, 219 F. Supp. 2d 635,

---

"members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* Plaintiff's SAC sets forth plausible allegations in satisfaction of each prong under Hunt. Plaintiff adequately alleges that some of its members would have Article III standing to individually pursue these claims (SAC at ¶¶ 15–20), that the interests it seeks to protect are germane to the IAOVC's purpose (*id.* at ¶¶ 11–14), and that this action does not require the participation of individual members of the IAOVC (see generally id.). Thus, the Court finds that Plaintiff has sufficiently pleaded Article III standing on behalf of its organization to pursue these claims.

643 (D.N.J. 2002) (citations omitted). Thus, an equal protection claim arises when a person[5] "receiv[es] different treatment from that received by other [persons] similarly situated." *Id.* (citations omitted). Further, a plaintiff must allege that such discrimination was "intentional[ly]" perpetuated by the government. *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015), *as amended* (Feb. 2, 2016).

Plaintiff fails to adequately allege that Defendants treated Plaintiff and "similarly situated" persons—individuals descending from other national origins—differently in connection with removing the Monument. Plaintiff attempts to cure its pleading by pointing to West Orange's failure to remove the Tory Corner Monument, a privately funded monument on public grounds in West Orange erected to commemorate colonialists loyal to the British Crown who fought in the Revolutionary War. SAC at ¶ 53, 55. Plaintiff argues that the Tory Corner Monument represents a "symbol of hate and oppression," and yet descendants of British people and other national origins are able to enjoy it while descendants of Italian people can no longer enjoy the Columbus Monument. This argument is without merit. The decision in *Monumental Task Comm., Inc. v. Foxx*, 259 F. Supp. 3d 494, 500, 505 (E.D. La. 2017) is instructive here. In *Foxx*, the court dealt with a nearly identical issue – plaintiffs alleged an equal protection violation when the city removed confederate statutes from a public forum, but declined to remove a monument to Andrew Jackson. *Id.* at 498. There, the court subjected this differential treatment to rational basis review and determined several "reasonably conceivable" bases for removing some controversial statues and not others. *Id.* at 505. Notably, the court determined that the Andrew Jackson statute was "not tainted by the same degree of invidious animus" as the confederate monuments, and that the

---

[5] Plaintiff, while an organization, constitutes a "person" within the meaning of the Equal Protection Clause. *See, e.g.*, *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1305 (11th Cir. 2006).

government was not obligated to remove all offensive statues at once. *Id.* Here, the same "reasonably conceivable" bases exist to survive rational basis review.[6] Plaintiff acknowledges the clear animus toward the Monument but fails to allege any such animus toward the Tory Corner Monument. SAC ¶¶ 38–48. Further, like in *Foxx*, West Orange is not required to remove all potentially offensive statues at once, and Defendants may choose to later consider the propriety of the Tory Corner Monument. Accordingly, Plaintiff has not cured the defects in its pleading and fails to establish that Defendants treated its members differently than similarly situated persons.

Moreover, Plaintiff's conclusory allegations that Defendants intentionally discriminated against Italian-Americans "by benefitting Afro-Americans" are entirely without merit and must be rejected. *See Delbridge v. Whitaker*, No. 20-94227, 2010 WL 1904456, at *7 (D.N.J. May 10, 2010) ("Without specific examples giving rise to an inference of discriminatory intent, Plaintiff's claims cannot survive."); *see also Page v. Bartels*, 144 F. Supp. 2d 346, 368 (D.N.J. 2001) (dismissing plaintiff's equal protection claim where the plaintiff alleged that the government acted with "discriminatory intent" merely because the government's conduct tangentially impacted certain racial groups). There is no support for Plaintiff's contention that Defendants' decision to remove the Monument was an intentionally discriminatory act against *anyone*, let alone against Italian-Americans. Opp. at 25. Plaintiff's assertions suggesting any type of racial motive in the removal of the Monument are mere conclusory allegations and do not support an inference of discriminatory intent. Consequently, the Court dismisses Plaintiff's equal protection claim.

---

[6] Plaintiff has not alleged sufficient facts nor provided persuasive case law to support the contention that the alleged discrimination of it or its members is analyzed under intermediate or strict scrutiny. Opp. at 27–29.

9

### b. Procedural Due Process

Plaintiff reiterates its procedural due process allegations, claiming that its members have a protected property interest in the Monument and that Defendants violated their due process rights by removing the Monument without providing notice and an opportunity to be heard. SAC ¶¶ 88–91. The Procedural Due Process Clause protects people from deprivations of life, liberty, or property without due process of law. *Carey v. Piphus*, 435 U.S. 247, 258 (1978). To allege a denial of procedural due process, a plaintiff must allege: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process. *See Rusnak v. Williams*, 44 F. App'x 555, 558 (3d Cir. 2002) ("Procedural due process claims, to be valid, must allege state sponsored deprivation of a protected interest in life, liberty or property. If such an interest has been or will be deprived, procedural due process requires that the governmental unit provide the individual with notice and a reasonable opportunity to be heard."). Plaintiff has not cured its pleading and the Court dismisses the due process claim for failure to adequately allege a protected property interest in the Monument.

Plaintiff attempts to establish a protected property interest by asserting that West Orange granted to the VCA an "easement, license, and/or the right to use and maintain" the public land on which the Monument stood (SAC ¶ 34), and therefore Defendants violated Plaintiff's procedural due process when it removed the Monument without notice and an opportunity to be heard. *Id.* at ¶¶ 86–92. The Court disagrees. The Fifth Circuit has confronted a nearly identical issue – a private organization sued the City of San Antonio for removing a confederate monument, alleging a deprivation of a property interest where plaintiff claimed to possess an easement or license to use the land. *See Albert Sidney Johnston Chapter, Chapter No. 2060 v. City of San Antonio*, 14 F.4th 329 (5th Cir. 2021). There, the court entirely rejected plaintiff's due process argument for failure

to establish a property interest in the confederate monument or the land on which it stood. *Id.* at 331 ("The ASJ chapter would have us believe that it possesses an easement or license to use the land. But the land was generally inalienable and unassignable") (citation omitted). Similarly, here, Plaintiff has not adequately alleged the existence of an irrevocable easement and/or license, nor that any transfer of interest in real property occurred.[7] Plaintiff's allegations as to the existence of an easement or license are merely conclusory, and thus cannot establish a protected property interest.

Plaintiff further alleges a protected property interest on grounds that some of its members helped fund the Monument and belonged to the VCA when the Monument was first erected. SAC ¶¶ 17–18. These allegations are not sufficient to show any transfer of property interest from the VCA specifically to members of Plaintiff's organization. Even assuming the VCA had a protected property interest in the Monument, the VCA and Plaintiff are distinct "persons" within the meaning of the Due Process Clause. *See Mun. Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 825 (3d Cir. 2009) (defining persons under the Due Process Clause). At bottom, Plaintiff cannot enforce any property interest for due process purposes because it is not the VCA. *See Albert Sidney Johnson Chapter*, 14 F. 4th at 331. Accordingly, as Plaintiff has failed to allege facts sufficient to confer upon it a protected property interest in the Monument, the SAC's procedural due process claim is dismissed. *See Nifas v. Beard*, No. 08-834, 2009 WL 3241871, at *11, n.10 (W.D. Pa. Oct. 6, 2009), *aff'd as modified*, 374 F. App'x 241 (3d Cir. 2010) (plaintiff's procedural due

---

[7] New Jersey law supports Defendants' contention that Plaintiff possessed no real property interest in the Monument. Specifically, under N.J.S.A. § 28:2-1, Plaintiff has not adequately alleged any transfer of its interest in the Monument. *Id.* ("The control, custody, care and preservation of any public . . . monument . . . shall continue to be vested in the body or organization . . . to which such control, custody, care and preservation have been given by any [other] law."); *see also* N.J.S.A. 40A:12–1, et seq. (governing a municipality's ability to transfer interest in real property in New Jersey).

11

process claim failed where it did not meet "the initial burden of establishing that a protected property interest exists") (citations omitted).

### c. **First Amendment**

Plaintiff alleges that Defendants violated its First Amendment rights by removing the Monument from a traditional or designated public forum. SAC ¶ 61. Plaintiff's allegations are without merit because removal of the Monument constitutes government speech not regulated by the First Amendment. The Freedom of Speech Clause of the First Amendment to the United States Constitution prohibits the adoption of laws which abridge freedom of speech. U.S. Const. Amend. I. The clause restricts only government regulation of private speech; it does not regulate government speech itself. *See Johanns v. Livestock Marketing Assn.*, 544 U.S. 550, 553 ("[T]he Government's own speech ... is exempt from First Amendment scrutiny"). To determine whether alleged speech is governmental, the Court "conduct[s] a holistic inquiry designed to determine whether the government intends to speak for itself or to regulate private expression," rather than apply a set of "rigid factors." *Shurtleff*, 142 S. Ct. at 1588. This holistic inquiry typically includes: "the history of the expression at issue; the public's likely perception as to who (the government or private person) is speaking; and the extent to which the government has actively shaped or controlled the expression." *Id.* at 1589–90 (citing *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015)).

The Supreme Court considered these indicia in *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 464 (2009) where it determined that placement of a privately donated monument in a public forum constituted government speech. In holding that this was non-actionable governmental speech, the Supreme Court explained that historically, "[g]overnments have long used monuments to speak to the public." *Id.* at 470. Moreover, the Court reasoned that the public

was likely to perceive the government, not a private organization, as the speaker of the Monument's message. *Summum*, 555 U.S. 460 at 470–71 ("Just as government-commissioned and government financed monuments speak for the government, so do privately financed and donated monuments that the government accepts and displays to the public on government land."); *id*. at 471 ("[P]ersons who observe donated monuments routinely – and reasonably – interpret them as conveying some message on the property owner's behalf."). Further, the Supreme Court held that a government maintains control over the speech when it exercises its approval authority over which monuments to display in public. *Id.* at 473 ("[T]he City has 'effectively controlled' the messages sent by the monuments in the Park by exercising 'final approval authority' over their selection."). Thus, the Supreme Court expressly held that "placement of a permanent monument in a public park is best viewed as a form of government speech and is therefore not subject to scrutiny under the Free Speech Clause." *Id.* at 464; *see also Gardner II*, 857 F. App'x at 635–36 (relying on *Summum* and holding that removal of a monument from a public park constituted government speech exempt from First Amendment scrutiny).

Here, Plaintiff's free speech claim is not meaningfully distinguishable from the claim in *Summum*. As in *Summum*, West Orange decided not to display a privately donated monument in a public park. SAC at ¶¶ 48, 52. Having conducted a holistic inquiry into the expression at issue, the Court is satisfied that, under binding Supreme Court precedent, removal of the Monument is government speech and therefore insulated from First Amendment liability.

To the extent Plaintiff argues that the Supreme Court's recent decision in *Shurtleff* alters this analysis or necessitates a contrary conclusion, the Court is not persuaded. *See* ECF No. 43 at 2–3 (contending in supplemental briefing that, based on *Shurtleff*, the Monument is not government speech because it is not a "government-controlled message."). *Shurtleff* did not create

a new standard for finding governmental speech – it merely reiterated the existing precedential value of the inquiry conducted in *Summum*. *Shurtleff*, 142 S. Ct. at 1589–90 (relying on *Summum* to conduct a holistic government-speech analysis under the First Amendment). In *Shurtleff*, the Supreme Court held that the City of Boston violated plaintiff's First Amendment rights when it refused to allow plaintiff's organization to raise its self-described "Christian flag" under the city's flag program, which permitted private groups to apply for use of government-owned flag poles outside of city hall. *See generally id.* The Supreme Court determined that the city's flag program did not express government speech, and thus its refusal to allow plaintiff's "Christian flag" amounted to impermissible religious viewpoint discrimination in violation of the First Amendment. *Id.*

Significantly, however, *Shurtleff* is factually distinguishable from this litigation and does not disrupt this Court's finding of government speech. In *Shurtleff*, the Supreme Court considered whether temporarily displaying flags of various private organizations in a public forum constituted government speech. *Shurtleff*, 142 S. Ct. at 1584. In contrast, here, the Monument is alleged to have been a permanent fixture in a public forum for 28 years. SAC ¶ 27. Further, in *Shurtleff*, the city of Boston had expressly invited and opened up to the public the ability to fly flags in a public forum. *Shurtleff*, 142 S. Ct. at 1592. But, here, Defendants do not appear to have opened the public forum at issue to the general public for the erection of any other monuments. ECF No. 42 at 4; *Shurtleff*, 142 S. Ct. at 1589 ("The boundary between government speech and private expression can blur when, as here, a government *invites* the people to participate in a program.") (emphasis added). Thus, the Supreme Court's ruling in *Shurtleff* does not provide support to Plaintiff's claim in the instant action.

Other courts that have analyzed governmental speech in light of *Shurtleff* have held the same. *See Am. Ital. Women for Greater New Haven v. City of New Haven*, 2022 WL 1912853 (D. Conn. June 3, 2022). In *City of New Haven*, a factually analogous case to the instant action, the District of Connecticut expressly concluded, under *Summum* and *Shurtleff*, that removal of a Christopher Columbus statue constituted government speech. The court held that *Summum* "directly foreclosed" a First Amendment challenge to the removal of a privately donated monument from a public forum. *Id.* at *8. This Court agrees. "Where a city is 'communicat[ing] governmental messages,' as is the case here, it is 'free to choose the [monument it displays] without the constraints of the First Amendment's Free Speech Clause.'" *Id.* at *8 (citing *Summum*, 555 U.S. 460; *Shurtleff*, 142 S. Ct. 1583, 1590). Accordingly, the Court dismisses Plaintiff's cause of action for a violation of its First Amendment rights.

    d. <u>**Abuse of Public Trust**</u>

Plaintiff's SAC adds a claim for "abuse of public trust," asserting that West Orange held the Monument in trust for public use and that Defendants did not act in good faith in executing their duties as trustees of the public trust. SAC ¶¶ 105–07. Plaintiff's claim fails because New Jersey's public trust doctrine does not apply to the disposition of private property located in a public space. "The public trust doctrine provides that the State of New Jersey holds the state's *natural resources* in trust for the benefit of its citizens." *New Jersey Dep't of Env't Prot. v. E.I. du Pont de Nemours & Co.*, No. 19-14766, 2021 WL 6144081 (D.N.J. Dec. 30, 2021) (emphasis added) (citing *Borough of Neptune City v. Borough of Avon-by-Sea*, 61 N.J. 296, 294 A.2d 47, 51-53 (1974)); *see also* N.J.S.A. 13:1D–150; N.J.S.A. 13:19–48(b) (both codifying the public trust

doctrine and its application to "natural resources").[8] Plaintiff's SAC contains no allegations of fact or law that would warrant the extension of the public trust doctrine to non-natural resources like the Monument. Thus, the Court dismisses Plaintiff's fourth and final claim.

## V. **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 32) is granted, and the Court dismisses the SAC without prejudice. An appropriate Order accompanies this Opinion.

**DATED**: March 31, 2023

s/ Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**

---

[8] While Plaintiff relies on *Coles v. City of Newark*, 95 N.J. E.q. 73 (Ch. Div. 1923), a state court decision from 1923 concerning the movement of a statue within a public park, Defendants assert its inapplicability because, among other reasons, *Coles* did not squarely address the issues present in the instant action and is a non-binding state court determination. The Court further notes, as discussed above, the public trust doctrine has been interpreted narrowly in the century following the *Coles* decision.

16